IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KAITLYN CISLO,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: |
| | ) | |
| **VALI, INC.** | ) | |
| | ) | **JURY DEMANDED** |
| Defendant. | ) | |

# COMPLAINT

**COMES NOW** Plaintiff, Kaitlyn Cislo ("Plaintiff" or "Cislo"), by and through her undersigned counsel of record, and files this Complaint against Vali, Inc. ("Defendant" or "Vali"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. §12101 et seq. (the "ADA").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343.

3. The unlawful employment practices described herein were committed in Madison County, Alabama; as such, venue lies in the United States District Court

for the Northern District of Alabama, Northeastern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States of America, who currently resides in Madison County, Alabama.

5. Plaintiff is over the age of nineteen (19) years.

6. Defendant is an employer, in the State of Alabama, within the meaning of 42 U.S.C. § 12111(5) in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under the ADA.

7. During all times relevant to this Complaint, Defendant conducted business throughout Alabama, with a physical location in Madison County, Alabama, with an address of 6767 Old Madison Pike, Huntsville, Alabama 35806.

8. Defendant was Plaintiff's employer during all times relevant to this Complaint.

## ADMINISTRATIVE EXHAUSTION

9. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on September 10, 2021. Charge No. 420-2021-02586 (the "Charge") alleged that Plaintiff was subjected to

discrimination based on her disability, in violation of the ADA, and to retaliation for opposing unlawful conduct, in violation of the same. (See **Exhibit A**).

10. The EEOC issued a Dismissal and Notice of Rights (the "RTS") for the Charge on June 3, 2022. (See **Exhibit B**).

11. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS.

12. Plaintiff has thus exhausted all administrative remedies available prior to filing this Complaint.

## FACTS

13. Cislo was hired by Defendant on or about February 2, 2021, to work as an Accounts Payable Accountant.

14. On or about March 3, 2021, Cislo was diagnosed with Narcolepsy Type One (1) ("Narcolepsy").

15. Cislo suffers from Narcolepsy, Epilepsy, and Postural Orthostatic Tachycardia Syndrome ("POTS").

16. Narcolepsy, Epilepsy, and POTS (collectively as "Health Conditions") are qualifying disabilities under the ADA.

17. These Health Conditions substantially limit Cislo with respect to one (1) or more major life activities.

18. Cislo was and is qualified to perform the essential job duties as an Accounts Payable Accountant.

19. In early May 2021, Cislo informed Defendant's Chief Executive Officer ("CEO"), Steve Smith ("S. Smith"), and Defendant's Chief Financial Officer ("CFO"), Kim Smith ("K. Smith"), of her Health Conditions and need for ongoing medical treatment.

20. Cislo specifically asked K. Smith not to disclose her health information to Angela Byrom ("Byrom").

21. Cislo believed that if Byrom knew of Cislo's Health Conditions, she would tell others.

22. Cislo did not authorize her Health information to be shared with anyone other than management, who needed to know.

23. In or around May 2021, Cislo overheard Byrom, on the phone, discussing Cislo's Health information with Ashley Logan ("Logan").

24. Logan is not in management and did not need to know Cislo's Health Conditions.

25. Cislo did not give anyone permission to disclose Cislo's medical information to Logan.

26. Logan worked remotely, so Cislo had never met her in person.

27. On or about May 7, 2021, Cislo was instructed to build office chairs for new employees.

28. While building chairs, Cislo injured her foot.

29. In fear of retaliation, Cislo did not immediately go to the doctor.

30. However, on or about May 10, 2021, Cislo's foot was completely black and blue, and she was unable to move her toes.

31. Cislo had broken her two toes and tore her plantar tendon.

32. Consequently, Cislo was put in a cast and sent to physical therapy.

33. Defendant never discussed Worker's Compensation with Cislo.

34. Cislo's doctor advised Cislo that she could no longer drive safely.

35. Cislo's doctor advised her to seek a reasonable accommodation per the ADA; specifically, part-time hours and a modified schedule.

36. Cislo was the Defendant's only employee not authorized to telework.

37. On or about June 21, 2021, while Cislo was alone in the office because all the other employees were teleworking, Cislo had a seizure lasting thirty-five (35) minutes.

38. On or about July 8, 2021, Cislo emailed K. Smith (K. Smith was teleworking) and requested an accommodation pursuant to her disability.

39. Cislo specifically requested that she be permitted to work part-time as an accommodation.

40. On or about July 9, 2021, K. Smith came into the office and discussed Cislo's reasonable accommodation request.

41. K. Smith agreed Cislo could go part-time and, if needed, that she could shift her hours for a doctor's appointment.

42. Cislo's hours were to change to 8:00 a.m. - 1:00 p.m., effective August 2, 2021.

43. Cislo was informed that she would no longer be eligible for the company's health insurance.

44. Defendant hired Jamie Roth ("Roth") to work as a Human Resource ("HR") Manager; Roth was authorized to telework; however, Cislo remained unauthorized.

45. On or about July 30, 2021, Cislo went to K. Smith's office to remind K. Smith about her part-time hours beginning on August 2, 2021, as well as her upcoming August 4, 2021, doctor's appointment.

46. K. Smith responded to Cislo's reminders by saying, "so part-time is already not working."

47. Cislo's reasonable accommodation request was effectively denied.

48. Cislo did not immediately debate this with K. Smith as she was fearful of retaliation.

49. Cislo subsequently emailed K. Smith on or about July 30, 2021, to remind her of the previously agreed upon accommodations, and sent her a screenshot of the Department of Labor website to notify K. Smith that her treatment was against the law.

50. K. Smith did not respond to Cislo's email.

51. On or about Sunday, August 1, 2021, at 5:30 p.m. Cislo received an email from Synovus indicating that her Business Banking access and token had been disabled.

52. Upon receiving this email, Cislo sent a text message to Vali's Director of HR, Wendy Welch ("Welch"), to ask whether she had been terminated.

53. Welch replied by saying that she did not know, and she had not spoken with anyone about it.

54. Never having received a reply, Cislo sent another email to K. Smith and S. Smith, on August 1, 2021, to inquire as to her employment status.

55. Cislo reminded K. Smith and S. Smith of her accommodation request and how their discriminatory treatment of her violated the law.

56. Instead of responding to Cislo via email, S. Smith called her.

57. On the phone, S. Smith told Cislo that she was "terminated for insubordination".

58. Cislo was terminated on or about August 1, 2021.

59. Immediately after speaking with S. Smith, Defendant wiped Cislo's phone completely clean.

60. Due to her phone being wiped, Cislo lost all her contacts, photos, and doctor's appointment reminders.

61. Cislo was not warned about insubordination at work, prior to her termination.

62. Cislo never received any written or verbal warnings before she was terminated.

63. Defendant's actions in terminating Cislo resulted in serious financial and emotional harm to Plaintiff.

## COUNT I- DISABILITY DISCRIMINATION UNDER THE ADA

64. Cislo's Health Conditions are qualifying disabilities under the ADA.

65. These Health Conditions substantially limit Cislo with respect to one (1) or more major life activities.

66. Cislo was and is qualified to perform the essential job duties expected of her at Vali.

67. In early May 2021, Cislo informed S. Smith and K. Smith of her Health Conditions and need for ongoing medical treatment; therefore, Defendant had knowledge of Cislo's disabilities.

68. Defendant authorized all employees, except Cislo, to telework from home.

69. New hires such as Roth were being authorized to telework; however, Cislo was still denied authorization.

70. If Cislo was authorized telework, she would have been able to maintain her full-time hours.

71. Cislo was treated differently than other employees because of her Health Conditions.

72. Cislo was terminated on August 1, 2021.

73. Defendant's decision to terminate Cislo was motivated by Cislo's Health Conditions.

74. Defendant's actions in terminating Cislo resulted in serious financial and emotional harm.

## COUNT II- FAILURE TO ACCOMMODATE

75. Cislo's Health Conditions are qualifying disabilities under the ADA.

76. These Health Conditions substantially limit Cislo with respect to one (1) or more major life activities.

77. Cislo was and is qualified to perform the essential job duties expected of her at Vali.

78. In early May 2021, Cislo informed S. Smith and K. Smith of her Health Conditions and need for ongoing medical treatment; therefore, Defendant had knowledge of Cislo's disabilities.

79. K. Smith agreed Cislo could go part-time and, if needed, that she could shift her hours for a doctor's appointment.

80. Cislo's hours were to change to 8:00 a.m. - 1:00 p.m., effective August 2, 2021.

81. Cislo subsequently emailed K. Smith on or about July 30, 2021, to remind her of the previously agreed upon accommodations, and sent her a screenshot of the Department of Labor website to notify K. Smith that her treatment was against the law.

82. Cislo never received an email response from K. Smith.

83. The reasonable accommodations requested by Cislo were never effectively granted by Defendant.

84. Defendant violated Cislo's rights under the ADA by never providing Cislo with a reasonable accommodation, but rather terminating Cislo's employment instead.

## COUNT III- RETALIATION

85. In early May 2021, Cislo informed S. Smith and K. Smith of her Health Conditions and need for ongoing medical treatment; therefore, Defendant had knowledge of Cislo's disabilities.

86. Cislo engaged in statutorily protected conduct when she made internal complaints to HR, as well as when she requested accommodations for her Health Conditions.

87. Cislo subsequently emailed K. Smith on or about July 30, 2021, to remind her of the previously agreed upon accommodations, and sent her a screenshot of the Department of Labor website to notify K. Smith that her treatment was against the law.

88. Cislo never received a response from K. Smith.

89. On Sunday, August 1, 2021, at 5:30 p.m. Cislo received an email from Synovus indicating that her Business Banking access and token had been disabled.

90. Upon receiving this email, Cislo sent a text message to Vali's Director of HR, Welch, to ask whether she had been terminated.

91. Welch replied by saying that she did not know, and she had not spoken with anyone about it.

92. As Cislo's first email to K. Smith went unanswered, Cislo sent another email to S. Smith and K. Smith, on August 1, 2021, to inquire as to her employment status.

93. Cislo reminded Defendant of her accommodation request pursuant to her disabilities, and how their treatment of her violated the law.

94. Instead of responding to Cislo via email, S. Smith called her.

95. On the phone, S. Smith told Cislo that she was "terminated for insubordination".

96. In retaliation for Cislo engaging in the statutorily protected activities listed above, Defendant subjected Cislo to unlawful employment actions, including, termination.

97. As a result of Defendant's retaliatory termination, Plaintiff suffered serious financial and emotional harm.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impractical;

C. Liquidated damages equal to the amount of back pay;

D. Punitive damages;

E. A reasonable attorneys' fee;

F. Plaintiff's costs and expenses;

G. Interest on all monies owed; and

H. Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 1st day of September 2022.

>Respectfully submitted,
>
>/s *Anthony D. Michel*
>Anthony D. Michel (ASB-6809-064M)
>*Attorney for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile:  (205) 994-2819
Anthony@wmalabamalaw.com

**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

>Vali, Inc.
>c/o Kimberly D. Rose
>6767 Old Madison Pike, Suite 265
>Huntsville, Alabama 35806

>/s *Anthony D. Michel*
>Anthony D. Michel